```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GALAXY PRODUCTS & SERVICES,    :    CIVIL ACTION
INC., et al.                   :
                               :
     v.                        :
                               :
AMI ENTERTAINMENT NETWORK,     :
INC., et al.                   :    NO. 12-6963
```

MEMORANDUM

McLaughlin, J.                                      August 4, 2015

      These consolidated cases arise from the parties' failed efforts to capitalize on the markets for regulated gaming in Illinois and Oklahoma.  The plaintiff/counterclaim defendant Galaxy Products & Services, Inc. ("Galaxy") and plaintiff/counterclaim defendant GPS Global, LLC ("Global") (collectively, "GPS"), allege that the defendant/counter claimant AMI Entertainment Network, Inc. ("AMI") failed to deliver gaming software and hardware as specified by the parties' contracts, causing GPS to miss the Illinois and Oklahoma gaming markets.  GPS seeks to recover the lost profits it would have made had it been able to enter the Illinois and Oklahoma gaming markets as planned.

      AMI has filed two motions for summary judgment as to GPS's claims.  In its first motion, AMI argues that GPS cannot recover lost profits because of the existence of limitation of

liability clauses in the parties' contracts. AMI also argues that GPS's concert of action claim fails because GPS has not introduced evidence showing that AMI had knowledge of a breach of duty or that AMI encouraged or assisted another in breaching a duty owed to GPS.

In its second motion for summary judgment, AMI argues that GPS's contract claims fail because GPS materially breached the contract by failing to apply for a gaming license in Illinois. AMI also argues that GPS could not have been licensed because one of its principals, John Bailey, had a criminal history that would have prevented licensure in Illinois. AMI has also moved for sanctions against GPS.

The Court grants AMI's first motion for summary judgment because the limitation of liability clauses contained in the parties' contracts are enforceable and prevent GPS from recovering its claimed lost profits. Additionally, GPS has failed to introduce evidence supporting its concert of action claim. The Court's decision on AMI's first motion for summary judgment renders AMI's second motion for summary judgment moot. The Court therefore will not consider AMI's second motion for summary judgment. The Court will deny AMI's motion for sanctions.

I.  Summary Judgment Record

In 2009, Illinois passed the Illinois Video Gaming Act (the "Act"), which legalized regulated gaming in taverns, truck stops, and bars in Illinois. AMI, which produced gaming machines for use in Europe, initially expressed interest in entering the Illinois gaming market. AMI utilized the services of attorney Thomas Fricke while it considered entering the Illinois gaming market. 230 ILL. COMP. STAT. ANN. 40/1-85 (West 2009); Maas Dep. 28:1-21; Fricke Dep. 474:14-22.

AMI eventually decided not to enter the Illinois market because it did not want to subject itself and its parent company to regulatory scrutiny. When he learned of AMI's decision in April 2010, Fricke informed AMI that he "might know somebody that would be interested in licensing [AMI's products]." Fricke Dep. 221:9-23, 230:11-231:13.

Still acting as AMI's attorney, Fricke contacted Brenda Kinnaman, a consultant, and told her about the licensing opportunity. Fricke told Kinnaman that whoever wanted to pursue the opportunity with AMI would have to hire Fricke as his or her attorney. Kinnaman contacted John Bailey, an operator of South Florida bingo halls and senior arcades, with the opportunity. Fricke had represented Bailey in the past on other matters. Fricke Dep. 223:1-24, 385:20-24, 474:14-22; Bailey Dep. 17:3-19:25, 26:12-20; Bailey Aff. ¶ 3, Sept. 9, 2014.

3

In May 2010, Fricke began representing Bailey in his negotiations with AMI. Fricke continued to represent AMI on other unrelated matters. Both Bailey and AMI signed a conflict of interest waiver form regarding Fricke's representation of Bailey in the licensing transaction. AMI was to be represented in the negotiations by the law firm Dickstein Shapiro. Pls.' App. Ex. 3; Fricke Dep. 35:12-40:14, 519:6-21.

Bailey subsequently created Galaxy and Global to pursue, among other opportunities, the licensing opportunity with AMI. GPS began negotiating, with Fricke's assistance, with AMI in October 2010. Dickstein Shapiro did not participate in the negotiations until January 2011. Bailey Aff. ¶ 9, Sept. 9, 2014; Bailey Dep. 71:8-11; Fricke Dep. 301:19-302:24.

After negotiating for over a year, the parties signed contracts in December 2011 for AMI to license its products to Galaxy for the Illinois market and to provide hardware to Global for the Oklahoma gaming market. Def.'s App. Exs. M-O; Bailey Dep. 180:14-181:2, 191:14-21. Both contracts contained limitation of liability clauses which limited the damages available under the contracts to cost of cover with a cap of $1,000,000.00.[1] Def.'s First App. Ex. M § 15.3, Def.'s First App. Ex. O § 8.2.

---

[1] The full text of the limitation of liability clause in the Illinois agreement reads:

4

**15.3 Limitations Upon the Parties' Liability Under This Agreement.** No provision this Section 15 shall be deemed to limit: (1) the liability of the Licensee under provisions of this Agreement that provide for the Licensee's payment of the License Fee, or (2) the liability of the Licensee for payment of the Development Fee or the Additional Development Fee.  Otherwise:

(a) Except as expressly provided in this Agreement, no Party or Affiliate thereof or any director, trustee, officer or employee of such Party of Affiliate shall be liable for any special, incidental, consequential, punitive or indirect damages, economic damage due to injury to property, lost profits, loss of business opportunity or loss of data, whether or not the possibility of such loss was known or foreseeable, it being understood however that any breach of the Licensor's duty to reimburse the Licensee for the Licensee's cost of covering performance as set out in Section 3 of this Agreement shall not be an excluded type of damages that is precluded pursuant to this **paragraph (a) of Section 15** of this Agreement; and

(b) Regardless of whether any remedy set forth in this Agreement shall fail of its essential purpose, the liability of either Party under this Agreement arising from any breach hereof under all theories of recovery including contract, tort, (including negligence) strict liability and misrepresentation shall not exceed

> in the aggregate, the sum of one million dollars ($1,000,000).

Def.'s First App. Ex. M § 15.3 (emphasis in original).

Similarly, the text of the limitation of liability clause in the Oklahoma agreement reads:

> **8.2 Damages for Cost of Covering Performance in Event of Breach; Exclusion of All Other Kinds of Damages; Aggregate Limitation of Liability for All Damages.** In the event that the Vendor shall materially breach this Agreement and further, upon Notice, shall fail to duly and timely cure the breach, by Continuing Cure if applicable, then upon further Notice to the Vendor the Purchaser shall have the prerogative to procure covering performance by a person not a party to this Agreement and, subject to the aggregate limitation on the amount of damages that a Party can collect for breach of this Agreement, as hereinbelow set out, the Purchaser shall be entitled to collect from the Vendor, as contract and incidental damages, the Purchaser's demonstrable costs, including incidental costs, of procuring such covering performance. Except as expressly hereinabove set out, no Party or Affiliate thereof, or any trustee, director, officer or employee of such Party or Affiliate shall be liable for any of the following types of damages: special damages, incidental damages, consequential damages, punitive damages, indirect damages, economic loss due to any of (1) injury to property, (2) lost profits, (3) loss of business opportunity, or loss of data. Neither Party nor any Affiliate of either shall be entitled to any recovery in respect of such excluded types of damages, regardless of any failure of essential purpose or whether the possibility of loss was foreseeable. In any event, the liability of either Party for damages for breach of this agreement together with any

The limitation of liability provisions were the subject of extensive negotiations between the parties. Bailey and Mike Maas, the president of AMI, were personally involved in the negotiation over these provisions. Bailey personally emailed Maas the limitation of liability proposal that was eventually adopted in the agreements. Bailey Dep. 83:6-16, 126:6-17; Def.'s First App. Ex. I.

AMI never delivered any hardware or software to GPS. Despite efforts to do so, GPS never obtained software or hardware from other providers to cover for AMI's failure to deliver under the contract. Bailey Dep. 261:20-262:2; Pls.' App. Ex. 18.

## II.  Procedural History

Galaxy initiated this lawsuit against AMI and Fricke in the Southern District of Illinois on May 8, 2012. On December 11, 2012, this case was transferred from the Southern

---

> other agreement between the Parties or between the Vendor and the Affiliate, shall not collectively exceed the aggregate sum of one million dollars ($1,000,000.00) (the "Aggregate Damages Limitation") for all breaches and entitlements to damages not categorically excluded hereunder. For the avoidance of doubt, the Aggregate Damages Limitation shall apply to both this Agreement and the Illinois Agreement as if they were one and the same agreement.

Def.'s First App. Ex. O § 8.2 (emphasis in original).

District of Illinois to this Court on the order of the Honorable Judge Michael J. Reagan.

On April 17, 2013, AMI filed a separate lawsuit against Global in this Court over the Oklahoma contract. <u>AMI Entertainment Network, Inc. v. GPS Global, LLC</u>, 13-2049. The parties stipulated to the consolidation of the two actions on May 8, 2013, and the Court approved of the consolidation on May 13, 2013. On September 19, 2013, the Court directed the Clerk of Court to mark the 13-2049 case as closed, and ordered that all documents in the consolidated action be filed in the 12-6963 case. The Court also ordered that Global be added as a plaintiff and counterclaim defendant in the 12-6963 action.

On September 19, 2013, Galaxy dismissed its claims against Fricke after the parties agreed to a settlement. On September 18, 2013, Galaxy filed its third amended complaint, and Global filed a counterclaim against AMI based on the Oklahoma agreement. Galaxy and Global collectively brought five claims against AMI: Count I – Concert of Action; Count II – Breach of Illinois Agreement; Count III – Declaratory Judgment Concerning Damages – Illinois Agreement; Count IV – Breach of Oklahoma Contract; and Count V – Declaratory Judgment Concerning Damages – Oklahoma Agreement. In its answer to the Third Amended Complaint, AMI filed a counterclaim against Galaxy, alleging that Galaxy breached the Illinois agreement. AMI

8

currently has breach of contract claims pending against both Galaxy and Global.

On August 1, 2014, in the midst of discovery, AMI filed its first motion for summary judgment as to GPS's claims. On March 27, 2015, AMI filed a supplemental motion for summary judgment, as well as several Daubert motions.  GPS did not file any motions for summary judgment on AMI's claims.

III. Summary Judgment Standard

Under Fed. R. Civ. P. 56, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Id. at 247-48.

IV.   Discussion

AMI's motion for summary judgment will be granted as to the breach of contract and declaratory judgment claims because the limitation of liability clauses in the Oklahoma and Illinois agreements are enforceable and GPS does not seek cost of cover damages.  AMI's motion for summary judgment will be granted as to the concert of action claim because GPS has not produced any evidence showing that AMI substantially assisted or encouraged Fricke to violate any duty to the plaintiffs.  AMI's motion for sanctions will be denied.

    A.   Breach of Contract and Declaratory Judgment Claims

GPS's breach of contract claims fail because GPS does not seek damages for the cost of covering AMI's alleged failure to perform under the contracts.  The Illinois and Oklahoma agreements both contain clauses limiting liability under the contracts to the cost of covering with a cap of $1,000,000.00.  Def.'s First App. Ex. M § 15.3, Def.'s First App. Ex. O § 8.2.  Under Pennsylvania law, limitation of liability clauses are not disfavored and are generally enforceable.  <u>Valhal Corp. v. Sullivan Assoc., Inc.</u>, 44 F.3d 195, 201-04 (3d Cir. 1995); <u>Greenspan v. ADT Sec. Serv. Inc.</u>, 44 F.App'x 566, 568-70 (3d Cir. 2011).  Such clauses "are not subjected to the same stringent standards applied to exculpatory and indemnity

clauses." <u>Valhal</u>, 44 F.3d at 204.  If the limitation is "reasonable and not so drastic as to remove the incentive to perform with due care, Pennsylvania courts uphold the limitation." <u>Id.</u>

These clauses are reasonable limitations on liability. They provide for a substantial recovery - $1,000,000.00 – to compensate GPS for covering any breach of the contracts by AMI. Further, the limitation of liability applies to both parties. If GPS breached the contract, AMI's recovery would also be limited to cost of cover with a $1,000,000.00 cap.  The clauses are therefore enforceable, and GPS can only recover cost of cover damages with a $1,000,000.00 cap.

GPS makes three arguments in support of its contention that the limitation of liability clauses are unenforceable:  (1) that covering for any breach of contract by AMI was impossible, which removed AMI's incentive to perform the contract in good faith; (2) that the clauses are unconscionable; and (3) that the clauses are the result of undue influence.  Not one of these arguments is persuasive.

1. <u>The Possibility of Cover</u>

GPS argues that because the Illinois agreement was signed so close to the critical date to make an effective entry to the Illinois gaming market, covering for any breach by AMI

was impossible. It argues that this removed AMI's incentive to perform with due care, and that the limitation of damages provision should therefore not be enforceable.

GPS has not introduced evidence showing that covering for AMI's alleged breach was in fact impossible, or that the perceived impossibility removed AMI's incentive to perform the contract with due care. GPS's evidence on this point consists of its experts stating that success in the Illinois gaming market depended on early entry into the market. Pls.' Opp. to Def.'s Supp. Mot. Exs. 5-6. Additionally, GPS points to an unsuccessful attempt to cover for AMI's alleged breach as evidence that procuring cover was impossible. Bailey Aff. ¶ 14, Sept. 9, 2014; Kinnaman Aff. ¶ 11, Sept. 9, 2014.

One unsuccessful attempt at procuring substitute performance does not show that obtaining cover for AMI's alleged breach would have been impossible. If anything, the attempt at cover shows that the parties to the contract thought cover was a possibility. GPS would not have attempted to procure cover if it did not think it would be possible to procure substitute performance in time to meet the market. Furthermore, this evidence does not show that at the time the deal was signed, AMI had no incentive to perform the contract in good faith. GPS has not produced evidence showing that AMI regarded cover as an impossibility at the time the parties signed the agreement. GPS

12

has not created an issue of fact over whether the limitation of liability clause was "so drastic as to remove the incentive to perform with due care."  <u>Valhal</u>, 44 F.3d at 204.

        2.   <u>Unconscionability</u>

The limitation of liability clauses are not unconscionable because Bailey was involved in extensive negotiations over those clauses.  The doctrine of unconscionability bars the enforcement of clauses when there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." <u>Witmer v. Exxon Corp.</u>, 434 A.2d 1222, 1228 (Pa. 1981) (quoting <u>Williams v. Walker-Thomas Furniture Co.</u>, 350 F.2d 445, 449 (D.C. Cir. 1965)).

GPS had a meaningful choice when it came to the limitation of liability clauses.  It is undisputed that these clauses were the subject of extensive negotiations between GPS and AMI.  Bailey Dep. 83:6-16.  Indeed, it was Bailey himself who proposed the final terms of the limitation of liability clauses that were eventually included in the Illinois and Oklahoma agreements.  Bailey Dep. 126:6-17; Def.'s First App. Ex. I.  These undisputed facts defeat GPS's unconscionability argument.

GPS argues that Fricke had a conflict of interest due to his representation of AMI that prevented GPS from having a meaningful choice in the Illinois and Oklahoma agreements. Throughout its briefs GPS states that Fricke was secretly working for AMI and looking out for AMI's interests during these contract negotiations.

In May 2010, both AMI and Bailey signed a conflict of interest waiver regarding Fricke's representation of GPS during the contract negotiations. Pls.' App. Ex. 3; Fricke Dep. 35:12-40:14, 519:6-21. GPS has not introduced any evidence showing that Fricke continued to act in AMI's interests – rather than GPS's - in the contract negotiations after the signing of this waiver. GPS points to an entry in Fricke's billing records for the GPS account for a conference call with B. Bezant and M. Maas (both employees of AMI or its parent company) on June 9, 2010 as evidence that Fricke was actually working for AMI rather than GPS. Pls.'s App. Ex. 23. This is not evidence that Fricke was secretly working for AMI rather than GPS in the contract negotiations between the parties. It is unlikely that Fricke would include evidence of such double-dealing on a document intended to be read by Bailey and others at GPS. GPS has not introduced any evidence regarding the substance of this conversation between Fricke, Maas, and Bezant, and Fricke testified that Bailey and Kinnaman were on the call as well.

14

Fricke Dep. 272:6-15. GPS has failed to create an issue of disputed fact over whether Fricke's alleged conflict of interest negated any meaningful choice GPS had in negotiating the contracts with AMI.

### 3. Undue Influence

GPS also argues that the contracts are voidable because they are the result of Fricke's undue influence. As stated above, GPS has failed to introduce evidence showing that Fricke exercised undue influence during his negotiation of the contracts on behalf of GPS. Even if GPS had introduced such evidence, this argument would fail because GPS is trying to enforce the very contracts it claims should be voided.

A contract "may be set aside or rescinded if it can be proven that, at the time of formation of the agreement, the parties did not bargain at arm's length." Biddle v. Johnsonbaugh, 664 A.2d 159, 161 (Pa. Super. Ct. 1995) (citing Frowen v. Blank, 425 A.2d 412, 416 (Pa. 1981)). GPS appears to want to void only the parts of the contracts it disagrees with, while enforcing the provisions of the contracts that would enable it to recover in this case. The Court is unaware of any cases holding that the doctrine of undue influence may be used to void only part of a contract while enforcing other parts. Rather, a contract that is the product of a confidential

relationship is presumptively voidable "unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond the reach of suspicion." Frowen, 425 A.2d at 416. If the contract is rescinded due to undue influence as GPS claims it should be, GPS would not be able to recover the lost profits damages it seeks.

The limitation of liability clauses in the Oklahoma and Illinois agreements are enforceable because GPS had a meaningful choice via extensive negotiations over those provisions.  Summary judgment is granted in AMI's favor on GPS's contract claims because GPS does not seek cost of cover damages - the only type of damages recoverable under the Illinois and Oklahoma contracts.

    B.   Concert of Action Claim

GPS's concert of action claim fails because GPS has not introduced any evidence showing that AMI gave substantial assistance or encouragement to Fricke to breach Fricke's duty to GPS.  Section 876 of the Restatement (Second) of Torts governs concert of action claims in Pennsylvania. Skipworth ex rel. Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997).  Section 876 allows a third party to be held liable for the tortious conduct of another where the third party:  (1) does

16

a tortious act in concert with the other or pursuant to a common design with him; (2) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or (3) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.  RESTATEMENT (SECOND) OF TORTS § 876 (1979).

GPS has not introduced any evidence showing that AMI either assisted or encouraged Fricke to breach any duty to GPS. The only evidence GPS cites in support of its concert of action theory is:  (1) that Fricke was serving as AMI's attorney when he initially contacted Bailey with the Illinois opportunity; (2) that AMI negotiated an early draft of the Illinois agreement without the assistance of the Dickstein Shapiro law firm, which did not enter the contract negotiations under January 2011; and (3) the time record entry showing a conference call between Fricke, Maas, and Bezant in June 2010.  These facts fall short of showing that Fricke violated any duty owed to GPS; much less that AMI substantially assisted or encouraged such a breach. Summary judgment is granted in AMI's favor on GPS's concert of action claim because GPS has failed to produce evidence supporting its claim.

17

C.   Motion for Sanctions

AMI seeks sanctions under 28 U.S.C. § 1927, claiming that GPS's filings were frivolous and made in bad faith. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  To order sanctions under this section, a court must find that an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." In re Prudential Ins. Co. American Sales Practice Litig. Agent Actions, 278 F.3d 175, 188 (3d Cir. 2002) (citing Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1191 (3d Cir. 1989)).  Indications that an attorney has acted in bad faith include the fact that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." In re Prudential, 278 F.3d at 188 (quoting Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. Of Teachers, AFL-CIO, 829 F.2d 1370, 1375 (6th Cir. 1987)).

18

Although the Court grants summary judgment for AMI on GPS's claims, the Court does not view these claims to have been made in bad faith.  GPS argued that the limitation of liability clauses were unenforceable because they were unreasonable, unconscionable, and the result of undue influence.  These arguments, although weak, do not rise to the level of frivolousness.  AMI's motion for sanctions is denied.

An appropriate order shall issue.